**UNITED STATES DISTRICT COURT FOR**

**THE NORTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – X

| | | |
|---|---|---|
| SOFTWARE LLC, a company registered in Belize under Registration No. IGSC/200/LLC879/20 | : | 5:20-cv-1509 (TJM/CFH) |
| | | **COMPLAINT** |
| Plaintiff, | : | |
| against | : | |
| MICHAEL MARANDA, an individual; MICHAEL MARANDA LLC,  A New York limited liability company; MICHAEL CARTER, an individual; MELISSA WELSH, an individual; DONALD D'AVANZO, an individual; RICHARD LONG, an individual, BLACK MESA COMMUNICATIONS, LLC, an Oklahoma limited liability company, and | : | |
| Defendant(s). | : | |

– – – – – – – – – – – – – – – – – – – – – X

Plaintiffs, Software LLC, through its counsel, T. Edward Williams, Esq., of Williams LLP for its Complaint, alleges as follows**:**

<u>**CONDITIONS PRECEDENT**</u>

Before filing this suit, Plaintiff complied with all condition precedent.  For example, in asserting its claims under the Computer Fraud and Abuse Act, 18

U.S.C. § 1030 *et. seq*., Plaintiff ensured that it was within the statute of limitations in asserting such claim consistent with the relevant Second Circuit's decisions.  In addition, Plaintiff intends to assert claims against E. Stewart Jones Hacker Murphy LLP (the "Firm"), and several of its attorneys, because, for the last several years, the Firm (through its attorneys) has assisted, and, at times, aided and abetted the named Defendants in defrauding Plaintiff and other individuals and entities similarly situated as Plaintiff.  Assuming the Firm has any Know Your Client (KYC) mechanisms in place, the Firm should have known that other than defrauding others, Defendants do not have a legitimate business—notwithstanding the number of companies the Defendants form.  If the Firm were purely litigation counsel, one may be inclined to give the Firm a pass, but the Firm is also transactional counsel to Defendants and many of the Firm's lawyers are intimately involved in Defendants' "business."  Thus, the Firm and Defendants are connected in a way that justifies holding the firm liable.

## INTRODUCTION

1.     Plaintiff seeks relief against Defendants for: (i) violation of the RICO Statute, 18 U.S.C. § 1961, with the predicate acts of criminal mail fraud, 18 U.S.C. § 1341 and criminal wire fraud, 18 U.S.C. § 1343; and civil and criminal

violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (ii) replevin for the immediate return of 1,632 of Plaintiff's L3+ computer bitcoin miners certain bitcoin mining machines; (iii) civil theft; (iv) conversion; (v) fraud; (vi) breach of the Hosting Agreements; (vii) fraudulent transfers between the Defendants and third parties; and (viii) unjust enrichment.

2.    Plaintiffs sent 1,632 of their L3+ Computer bitcoin miners to Defendant, Michael Maranda, LLC for Michael Maranda LLC to host under a Hosting Services Agreement entered into on March 9, 2020.  Under that Agreement, Defendants, Michael Maranda and Michael Maranda LLC, made representations and warranties as to the hosting facilities Maranda LLC operated and as to Michael Maranda's knowledge and expertise in operating a sophisticated bitcoin operation. It turned out, however, that Defendants, Michael Maranda LLC, Michael Maranda, and other named Defendants misrepresented nearly everything about the operation they were running to Plaintiff.  Overtime, Plaintiff came to learn that Defendants had been fraudulently billing Plaintiff for repair services that either did not occur or was not repair services at all within the meaning of the Hosting Services Agreement. When Plaintiff caught Defendants in the act, Defendants did not relent but instead diverted bitcoins from Plaintiff's bitcoin miners for Defendants own use and refused to return

Plaintiff's deposits and advance payment.  Also, Defendants concealed their prison and fraudulent business history from Plaintiff to induce Plaintiff to contract with Defendants. Had Defendants known of Defendant, Michael Maranda's prison history, or Maranda LLC's business history, and of Michael Carter's history in stealing and operating stolen bitcoin miners, Plaintiff would not have contracted or interacted with Defendants.

3.      Based on the foregoing and as detailed below, Defendants seek a replevin for their miners, the return of certain deposits, and other damages.  Plaintiff also seeks its attorney fees and costs under the Hosting Services Agreement.

## PARTIES

### A.    PLAINTIFFS

4.      Plaintiff, Software LLC, ("Software"), is a Belize company doing business around the world and has its principal place of business at 5570 Princess Margaret Drive, Belize City, Belize.

### B.    DEFENDANTS

5.      Defendant, **MICHAEL MARANDA** ("Maranda"), is an individual who is one of the owners of Michael Maranda LLC and other entities established to defraud others.  Maranda's address is  38 Oaklawn Avenue Farmville, NY 11738.

4

6.      Defendant, **MICHAEL MARANDA LLC**, is a New York limited liability company established by Michael Maranda to defraud others. Michael Maranda LLC has a principal address at 38 Oaklawn Avenue Farmville, NY 11738 and service may be had on him at that address.

7.      Defendant, **MICHAEL CARTER**, is an individual residing in New York. Michael Carter conspired with Michael Maranda, Maranda LLC, and with the other Defendants named in this suit to defraud Plaintiff and other individuals similarly situated. Michael Carter uses the email address 0@minezero.com and goes by the alias Ross Perot on clandestine internet forums.  Michael Carter also uses the alias DeletedAccount.  Service may be had on Michael Carter by publication in Newspapers that operate in the Northern District of New York.

8.      Defendant, **RICHARD LONG**, is an individual who has been involved with Michael Maranda and Maranda LLC in defrauding Plaintiff and other individuals similarly situated. Service may be had on Richard Long by publication in Newspapers that operate in the Northern District of New York.

9.      Defendant, **MELISSA WELSH**,  is an individual who is a resident of the State of New York Ms. Welsh resides with Defendant, Michael Carter, from time to time at an apartment in or close to Oswego, New York. Service may be had on

Melissa Welsh by publication in Newspapers that operate in the Northern District of New York.

10.    Defendant, **BLACK MESA COMMUNICATIONS LLC** ("Black Mesa"), is an Oklahoma limited liability company that is owned and operated by Defendant, Donald D'Avanzo, and has a principal place of business at 1400 S. Fretz Avenue, Suite 145 Edmond, OK 73003.  Black Mesa also operates from 214 Beach 91st Street, Apt. 3, Far Rockaway, NY 11693 and claims to operate under Federal Tax Identification No. 83-4706881.

11.    Defendant, **ADIRONDACK PV DESIGN** ("Adirondack"), is a New York limited liability company owned and operated by Richard Long. Upon information and belief, Adirondack is not operational and is defunct and its sole purpose was to be used to defraud Plaintiff.  Service may be had on Adirondack PV Design by publication in Newspapers that operate in the Northern District of New York.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter under 28 U.S.C. 1331, federal question jurisdiction, as this action arises out of, among other federal statutes, violation of federal statutes including, 18 U.S.C. § 1961, et seq. (the "RICO Act"); 18 U.S.C. § 1343 ("Wire Fraud"); and 18 U.S.C. § 1341 ("Mail Fraud"); and 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act). This Court also has

jurisdiction over this matter under 28 U.S.C. § 1332, diversity jurisdiction, because Plaintiff and Defendants are completely diverse and because the amount in controversy exceeds $75,000.00. Further, jurisdiction in this Court is premised on pendant or supplemental jurisdiction over Plaintiffs' claims brought pursuant to New York state law.

13.     Venue in the Federal District Court for the Northern District of New York is proper under 28 U.S.C. § 1391 because the Defendants are residents of the Northern District and because the property Plaintiff seeks to recover are located in the Northern District.

## ALLEGATIONS

14.     On March 9, 2020, Plaintiff entered into a Hosting Services Agreement ("Agreement") with Maranda LLC ("Maranda") under which Maranda LLC agreed to host 1,632 L3+ computer bitcoin miners owned by Plaintiff (the "Miners" or "Plaintiff's Miners"). *See* Agreement, attached hereto as **Exhibit A**.

15.     Under the Agreement, Maranda warranted and represented that Maranda LLC's facilities were suitable for co-location and hosting of cryptocurrency mining hardware and equipment in New York.  Agreement, § 2(n−o).

16.     Michael Maranda also warranted and represented that he and Maranda LLC are knowledgeable about bitcoin miners, that they know how to host bitcoin

miners, that they know when to repair bitcoin miners; and that they know how to repair bitcoin miners.

17.    Maranda and Michael Maranda also warranted and represented that they had specified knowledge about Plaintiff's Miners.

18.    Before entering into the Agreement Michael Maranda did not disclose to Plaintiff that he had been imprison for a year in federal prison as Inmate No. 716091053.

19.    In addition, Michael Maranda did not disclose his checkered business history in handling bitcoins computers for others.

20.    Michael Carter also did not disclose to Plaintiff his previous history in stealing bitcoins and bitcoin miners from Plaintiffs.

21.    Had Plaintiff known of Defendants prison record and Defendants checkered business past, Plaintiff would not have entered into the Agreement with Defendants.

22.    Plaintiff shipped its Miners to Maranda LLC directly from the manufacturer. *See* Spreadsheet of Plaintiff's Miners, attached hereto as **Exhibit B**.

23.    Plaintiff paid a hosting fee under Section 3(b) of the Agreement to Defendants, which provides for the monthly hosting fees to be paid to Maranda LLC of "equal to $0.0045 per kilowatt hour used by the Miners...."

24.   Section 3(b) of the Agreement provides, in its entirety, as follows:

b. *Monthly Hosting Services Fee.* Subject to an accurate and undisputed invoice (which, for purposes of this Agreement, shall mean an invoice that the Client has not provided written notice of any items in dispute within five (5) days of receipt of the invoice), Client shall compensate Michael Maranda LLC at the following monthly rates for Hosting Services for the Miners covered by this Agreement: Client shall be responsible for a fee equal to $0.0045 per kilowatt hour used by the Miners that is applicable if the Client does not elect to pay the Idle Miner fee, minus a reduction in fees for any Hosting Outage from the previous month (calculated on a per diem, pro-rata basis) and the cost of repair to the Client for any Hosting Damage Events from the previous month. It is anticipated that Client would utilize 3 mw and the monthly fee would be calculated as follows: 3 mw capacity. Subject to Clause 6.b, in the event that Client notifies Michael Maranda LLC in writing that one or more Miners should be powered down, the monthly Hosting Services fee shall be reduced proportionately, but in no event shall the monthly Hosting Fee be reduced below the electricity charge per kilowatt hour per Miner in effect at the time of any such reduction, multiplied by the Minimum Usage. Monthly fees for Hosting Services fees and Idle Miner fees shall be due and payable no later than the first of each month, for the following month. The monthly rates for Hosting Services are based on various charges, including an electricity charge of $.0045 per kilowatt hour per Miner in operation per month that includes all taxes and charges. In the event of an increase in the electricity charges (including without limitation, any governmental taxes or surcharges thereon), Michael Maranda LLC may increase the monthly rate for Hosting Services accordingly subject to a limit of the Maximum Price Increase in each 12 month period, and shall provide Client with at two (2) months prior written notification of any such increase that will be provided with supporting

information from third parties containing justification for the increase.   Any increased fees shall be applied based on the following example:   Electricity consumption of Miner in kilowatt hours (which shall, as applicable and subject to the Idle Miner Fee, in no event be lower than the Minimum Usage), multiplied by 24 hours, multiplied by 30.417 (reflecting the number of days in a month, calculated on the basis of a 365-day year divided by 12 months) multiplied by the current kilowatt per hour rate. In the event that Client elects to pay the monthly Hosting Services fees for a 12-month period in advance (which payment shall be

subject to any adjustments for electricity cost increases or reduced capacity as permitted by the terms of this Agreement), Client shall receive a five percent (5%) discount on the total amount of such fees.

25.   Also, Section 3(d) requires Plaintiff to deposit funds with Maranda LLC to protect against "the Expected Power Consumption" of Plaintiff's miners.

26.   Section 3(d) provides, in its entirety, as follows:

d. *Deposits.* Client shall be responsible for payment of a deposit in the amount of one month of the price of the power based on the Expected Power Consumption upon pool delivery of Miners to the Hosting Address or transfer of the wallets for the Miners. A portion of the deposit shall be applied to the monthly fee for Hosting Services for the first month of this Agreement. The balance shall be held by Michael Maranda LLC as security for the Client's full, timely and faithful performance of all of Client's obligations hereunder, including without limitation, the payment of monthly Hosting Services fees and repair charges; provided, however, that upon receipt of an invoice from the electricity provider for a deposit (and provision of such invoice to the Client), Michael Maranda LLC may pay such deposit to the electricity provider. Michael Maranda LLC will not use monies in the Client Bank Account for any other purpose of holding the deposit and paying the electricity deposit, unless the Client fails to pay any monthly Hosting Services fees or repair charges, or otherwise defaults with respect to any payment provision of this Agreement, Michael Maranda LLC may, but is not obligated to, use, apply or retain all or any portion of the deposit for the payment of any monthly Hosting Services fees or repair charges resulting from a default by Client. In the event that Client shall fully perform the payment obligations under this Agreement, Michael Maranda LLC shall refund such deposit within fifteen (15) business days after the termination or expiration of this Agreement, or apply same to the final monthly Hosting Services fee, as determined in Michael Maranda LLC's reasonable discretion. For avoidance of doubt, the deposit will be returned to the Client as set out in this paragraph regardless of whether Michael Maranda LLC has received the security deposit back from any third party it has transferred the deposit to.

27.    Plaintiff made deposits to Michael Maranda and Maranda LLC of **$48,409.95** to be used against electrical costs Maranda LLC were to incur.

28.    Plaintiff also made advance payment for  deposit of **$40,435.81** for electrical and internet services.

29.    In total, Plaintiff made deposits and advanced payments of **$88,845.76** to Maranda LLC.

30.    Maranda LLC and other Defendants did not spend Plaintiff's deposit and advance payments as required by the Agreement.

31.    In fact, Defendants used Plaintiff's deposit and advance payments for personal expenses.

32.    In fact, Maranda failed to disclose that at the time he was contracting with Plaintiff, he could not make the rent payment on the building he uses to host Plaintiff's miners.

33.    Indeed, Michael Maranda, Maranda LLC, and Michael Carter have owed back rent on the spaces they are leasing from various landlords.

34.    For all intent and purposes, Defendants are insolvent and concealed their economic condition from Plaintiff.

35.    Section 2(e) of the Agreement allows Maranda to make repairs to

Plaintiff's Miners, but only if Plaintiff grant prior written approval to Maranda LLC

of the repair.

36.    Section 2(e) of the Agreement provides, in its entirety, as follows:

e. *Repairs.* Any repairs to be completed will be at the expense of Client and are in addition
to any monthly fees for Hosting Services. If repairs, except replacing fans, are to be
completed by Michael Maranda LLC, labor for such repairs shall be billed at the rate of
$65.00 per hour for internal labor, and at the rate of cost plus ten percent (10%) for any
outside labor, together with any costs for parts associated with the repair. Michael
Maranda LLC reserves the right to increase hourly repair charges in its sole but
reasonable discretion and shall provide Client with at least thirty (30) days prior notice of
any increase in repair rates. Repairs will not be commenced until written authorization is
received by the Client to proceed. In the event that Client wishes to complete repairs on
the Miners on its own (whether directly or through a third party), Client shall provide
Michael Maranda LLC with at least three (3) business days' prior written notice of the
name of the party who will be on-site at Michael Maranda LLC's premises, and the
approximate time of the visit. The maximum service charge for replacing a fan on a
Miner is $8 or $12 for replacing 2 fans on the same Miner in one operation plus the
materials cost.

37.    Beginning in March 2020, Defendants created create a scheme to charge

Plaintiff additional sums through fraudulent invoicing.

38.    To that end, Defendants, Donald D'Avanzo and Richard Long, created or

used already existing corporate entities for the purpose of defrauding Plaintiff

by submitting fraudulent invoices to Plaintiff.

39.    The amounts received from the invoices were split between the

Defendants.

40.     Consistent with this scheme, Defendants sent Plaintiff multiple invoices claiming that Defendants had performed work on Plaintiff's Miners.

41.     Defendants did not actually perform repair work on Plaintiff's miners.

42.     Plaintiff's Miners did not need repair; instead, Plaintiff's Miners only needed to be set up properly consistent with the industry standard.

43.     In fact, Contrary to Michael Maranda's representations and Maranda LLC's representation, neither Michael Maranda, Michael Carter, Melissa Welch, Donald D'Avanzo, nor Richard Long knew or understood how to operate the Miners.

44.     Defendants specifically sent Plaintiff invoices in December 2020 for "repair work"  Defendants claimed was performed in March 2020, among other dates.

45.     Some invoices also indicated that Michael Maranda had perform repair work himself.

46.     Defendants did not perform any repair work on the Miners.

47.     Defendants used foreign and interstate commerce to send Plaintiffs these invoices.

48.     The invoices represented that the claimed "repair work" was performed by Black Mesa Communications LLC and by Adirondack PV Design.

49.     Maranda and the other defendants named in this lawsuit are currently in possession of Plaintiff's miners, and they have refused to release Plaintiff's miners without Plaintiff conditions.

50.     Defendants have each accessed Plaintiff's miners and transferred data from Plaintiff's miners in a manner that Plaintiff did not authorize, and, even if Plaintiff's authorize Defendants to access their miners, Defendants exceeded the scope of that authorization.

51.     For example, between March 9, 2020 and to the filing of this Complaint, Defendants accessed Plaintiff's Miners for the purpose of diverting bitcoins mined from Plaintiff's Miners to Defendants' respective bitcoin wallets.

52.     Since Defendants wrongfully accessed Plaintiff's Miners in violation of the Computer Fraud and Abuse Act, 18 U.S.C § 1030 *et. seq*. Plaintiff has lost more than 20 bitcoins or the equivalent of $360,000.00.

53.     The amounts Plaintiff has lost are directly traceable to Defendants' wrongful access of Plaintiff's Miners.

**COUNT I:**
**(RICO ACT VIOLATIONS: AGAINST ALL DEFENDANTS)**

54.     Plaintiff incorporates the previous allegations as if the allegations were fully set forth in this paragraph.

55.    Plaintiffs' claims arise under Section 1964(c) of the RICO Act, and Plaintiff asserts claims for violations of Section 1962(c) and (d) of the RICO Act.

**A.    The Enterprise**

56.    Defendants created an association-in-fact enterprise that consists of Michael Maranda, Maranda LLC, Melissa Welsh, Michael Carter, Donald D'Avanzo, Richard Long, Black Mesa Communications LLC, and Adirondack PV Design.

57.    The purpose of this enterprise was to defraud Plaintiff and other companies like Plaintiff of bitcoins and other cryptocurrencies by representing that Maranda LLC is a reputable bitcoin hosting and co-location company.

58.    Once the bitcoin companies fell for this ruse, Maranda LLC would take large amounts of deposits from them and take their miners and mine bitcoins for his own benefit notwithstanding the language of the Agreement entered into with bitcoin mining companies.

59.    Maranda LLC, Michael Maranda, Melissa Welsh, Michael Carter, Donald D'Avanzo, Richard Long, and the other entities formed by them would spend deposits made to Maranda LLC on personal expenses wholly unrelated to operating a bitcoin business.

60.    The activities of Defendants' enterprise affected interstate and foreign commerce because Plaintiff is based in Belize, because monies were wired

through foreign commerce, and because the Miners traversed foreign and interstate commerce to reach Maranda LLC.

61.    In violation of Section 1962(c), Defendants conducted or participated and conspired to participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, and, in so doing, was the proximate cause of Plaintiff's injury.

62.    Each of the individual defendants are persons within the meaning of Section 1961.

63.    Each of the individual defendant knew the essential scope of the Enterprise and each of the individual defendants intended to participate in the affairs of the Enterprise.

64.    Each of the Defendants played discrete roles in the Enterprise: (1) Maranda misrepresented Maranda LLC and its capabilities even though Maranda knew Maranda LLC could not host thousands of Miners; (2) Michael Maranda, Maranda LLC, and Michael Carter, misrepresented Maranda LLC's financial condition and its capabilities to make it appear as if Maranda LLC was financially sound and otherwise capable to operating a bitcoin hosting and co-location business without committing fraud; (3) The remaining Defendants schemed to obtain profits from fraudulent invoices they had prepared and sent to Plaintiff;

(4) Defendants each stole bitcoins and other cryptocurrencies mined from Plaintiff's miners and provided with unsubstantiated accounting and reasons why Plaintiff's miners were not mining the amount of bitcoins Plaintiff's miners were supposed to mine; (5) Defendants have each engaged in the extensive practice of taking Plaintiff's bitcoins from Plaintiff's miners and redirecting those bitcoins to each of the Defendants' own bitcoin accounts.

### B.    Specific Acts of Racketeering

65.    Defendants engaged in a pattern of racketeering activity as that term is defined in Section 1961, in that Defendants committed at least two acts of racketeering within 10 years of each other.

66.    Specifically, as more particularly described below, Defendants committed discrete violations of 18 U.S.C. §§ 1341 and 1343 from the date Defendants began doing business, which dates back to 2017 to the present.

### i.    Mail Fraud

67.    Under 18 U.S.C. § 1341, federal law imposes criminal sanctions on anyone who:

> Having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to . . . distribute, supply furnish or procure for unlawful use any counterfeit or spurious article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do . . . places

in any post office or authorized depository for mail matter, any matter of thing whatever to be sent or delivered by postal service . . . or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter of thing.

68.     Defendants knowingly devised a scheme or artifice to defraud Plaintiffs, or for obtaining money of Plaintiffs' properties by means of false pretenses, false representations, or promises or by distributing counterfeit and spurious articles.

69.     Each Defendant acted with the requisite intent to default Plaintiffs.

70.     In advancing, furthering, or carrying out the scheme to defraud Plaintiffs, upon information and belief, Defendants used the mails, or caused the mails to be used, in furtherance of their scheme to defraud Plaintiffs.

71.     Specifically, Defendants caused Plaintiff to ship its 1632 Miners through foreign and interstate commerce to Defendants using commercial mail delivery services.

72.     Each such use of the mails was in violation of 18 U.S.C. § 1341.

73.     Defendants acts of mail fraud constitute discreet Predicate Offenses under Section 1961.

### ii.  Wire Fraud

74.    Under 18 U.S.C. § 1343, federal law imposes criminal sanctions on anyone who:

> Having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

75.    Defendants knowingly devised a scheme to defraud or obtain money or property from Plaintiff by making materially false or fraudulent pretenses, representations, or promises.

76.    Each Defendant acted with the requisite intent to defraud Plaintiffs.

77.    Each Defendant knowingly (and collectively) devised a scheme to defraud or obtain money or property from Plaintiff by materially false or fraudulent pretenses, representations, or promises.

78.    In advancing, furthering, or carrying out the scheme to defraud Plaintiff, Defendants transmitted by means of wire or caused to be transmitted by means of wire, writings, signs, signals, and pictures for the purpose of executing their scheme, the following:

> a. Defendants sent numerous text messages via various mediums, including Telegram and other

messenger services from March 9, 2020, through the present;

b. Defendants used emails from various email service providers making fraudulent representations to Defendants. *See* Relevant Email and Text Messages attached hereto as **Exhibit C**.

79.   The wires affected interstate and foreign commerce.

80.   The uses of wires were each in violation of 18 U.S.C. § 1343.

81.   The acts described above constitute discrete Predicate Offenses under § 1961.

### iii.   Computer Fraud and Abuse Act

82.   Under  18 U.S.C. § 1030, federal law imposes civil and criminal penalty on all individuals and entities who damage a protected computer.

83.   The term "computer" is defined as any device for processing or storing data, which includes laptop and desktop computers. *See* 8 U.S.C. § 1030(e)(1).

84.   Further, the Court of Appeals for the Second Circuit has defined computers as restricted databases or other similar machines.

85.   A computer is protected, within the meaning of the Computer Fraud Abuse Act ("CFAA") where the computer is used in foreign commerce. *See* 8 U.S.C. § 1030(e)(2).

86.    Computer used in interstate or foreign commerce include any computer connected to the internet.

87.    All Defendants, with requisite intent and in violation of Section 1030(a)(4), knowingly accessed Plaintiff's protected bitcoin Miners, without Plaintiff's authorization or exceeded the authorization Plaintiff had granted Defendants, to obtain bitcoins mined from Plaintiff's Miners.

88.    All Defendants, with requisite intent and in violation of § 1030(a)(5)(A), caused the transmission of a program, information, code, or command to Plaintiff's bitcoin miners, and in so doing, caused damage to Plaintiff's bitcoin miners.

89.    All Defendants, with the requisite intent and in violation of §§ 1030(a)(5)(B) and 1030(a)(5)(C), accessed Plaintiffs bitcoin miners and recklessly caused damage to Plaintiff's bitcoin miners in that Defendants caused Plaintiff's bitcoin miners to operate less efficiently and mine less bitcoins.

90.    The acts described above constitute discrete Predicate Offenses under § 1030.

### iv.    Pattern of Racketeering

91.    The predicate offenses as described above had the same or similar purposes, results, participants, victims, and methods of commission, and are

otherwise interrelated by distinguishing characteristics and were not isolated events.

92.     Defendants' development of new companies and the transferring of assets in the name of other individuals included at least two acts of Wire Fraud over a period of more than two years.

93.     Defendants' commission of the Predicate Offenses included multiple acts of mail and wire fraud constitute conduct that extends temporally from the past into the future with a threat of repetition.

94.     Defendants' commission of the Predicate Offenses evidenced continuity because both amounted to a closed period of repeated conduct as well as conduct that extended temporally from the past into the future with a threat of repetition.

## COUNT II:
### (REPLEVIN FOR MINERS: Against All Defendants)

95.     Plaintiff incorporates the preceding allegations as if the allegations were fully set forth in this paragraph.

96.     Defendants, Michael Maranda and Maranda, LLC are in possession of Miners that belong to Plaintiff.

97.     Plaintiff has superior possessory right to the Miners.

98.     Plaintiff are entitled to immediate possession of the Miners.

99.   Plaintiff have attached an Emergency Motion under CPLR 7218 made applicable in this Court through Fed.R.Civ.P 64.

## COUNT III:
## (CONSPIRACY UNDER 18 U.S.C. § 1030(b) : Against All Defendants)

100.  Plaintiff incorporates the preceding allegations as if the allegations are fully set forth in this paragraph.

101.   Defendants agreed to defraud Plaintiff its money and of Plaintiff's miners; in addition, Defendants entered into a conspiracy to remove Plaintiff's Miners out of Plaintiff's custody possession or control and to steal bitcoins from Plaintiff's miners.

102.   Defendants undertook an overt act in furtherance of their agreement in that Defendants opened bank accounts; created fictitious invoices, received money and miners form Plaintiff based on false representations; transferred properties out of Plaintiff's reach.

103.   Each Defendant intentionally participated in the furtherance of the plan and the purpose of the plan.

104.   Plaintiffs suffered damages as a proximate cause of Defendants' actions in an amount to be proven at trial.

## COUNT IV:
## (CONVERSION: Against All Defendants)

105.  Plaintiff incorporates the preceding allegations as if the allegations are fully set forth in this paragraph.

106.  Plaintiff has a possessory right and property interests in their Miners and the deposits they paid to Defendants.

107.  Defendants have exercised dominion and control over Plaintiff's Miners and money so as to deprive Plaintiff of the Miners and money.

108.  Plaintiff is entitled to damages in amounts to be proven at trial.

## COUNT V:
### (FRAUD: Against Michael Maranda, Michael Carter, and Maranda LLC)

109.  Plaintiff incorporates the preceding allegations as if they are fully set forth in this paragraph.

110.  Defendants materially misrepresented facts about Maranda LLC's facility, about Maranda's intention and use of Plaintiff's deposits and advance payments, about Maranda LLC's capitalization, about Maranda and Maranda LLC's ability to finance Maranda LLC, among other misrepresentations. In addition, Defendants misrepresented the ownership of Plaintiffs' Miners.

111. In addition, Defendant, Michael Maranda concealed his criminal and business history from Plaintiff.

112.  Defendant, Michael Maranda, did not disclose to Plaintiff that he had been imprisoned for at least one year in federal prison as Inmate No. 71609-053.

113.  Further, Defendant Michael Carter did not detail his business history in the bitcoin mining industry in dealing with Plaintiff.

114.  Defendant, Michael Carter, concealed that he had stolen machines from other individuals and entities who had hosted their bitcoin miners with Michael Carter, Michael Maranda, and  Maranda LLC.

115. Defendant knew at or near the time they were making the misrepresentations that the misrepresentations were false.

116.  Defendants induced Plaintiff to rely on their representations.

117.  Plaintiffs relied on Defendants' representations.

118.  Plaintiff reliance was justified.

119.  Plaintiff suffered damages in an amount to be proven at trial.

## COUNT VI:
### (BREACH OF HOSTING SERVICES AGREEMENT: Against Michael Maranda and Michael Maranda LLC)

120.  Plaintiff incorporates the preceding allegations as if they were fully set forth in this paragraph.

121.  Defendants entered into the Hosting Services Agreement with Plaintiff.

122.  Among other warranties and representations, Defendants represented and warranted that its facility was suitable for Plaintiff's miners and that it facility was optimal for Plaintiff's Miners.

123.  Plaintiff performed it obligations under the Contract in that Plaintiff paid Defendants deposits and advance fees and transported its Miners to Maranda LLC.

124.  Defendants breached their agreements with Plaintiff by claiming bogus repairs to Plaintiff's miners that Plaintiff's Miners did not require, by claiming they performed work that they did not actually perform, by siphoning bitcoins from Plaintiff to Defendants.

125.  Plaintiff is entitled to damages in amounts to be proven at trial.

## COUNT VII:
## (FRAUDULENT TRANSFER: Against All Defendants)

126.  Plaintiff incorporates the preceding allegations as if the allegations were fully set forth in this paragraph.

127.  Defendants have conveyed Miners and money owned by Plaintiff to and among each other and to various third parties, which whom they are affiliated.

128.  At the time Defendants conveyed Plaintiff's Miners and money, the conveyance was made without fair consideration.

129.  Defendants were insolvent or rendered insolvent because of the transfer.

130.  Further, Defendants committed the transfer to hinder, delay, and defraud creditors like Plaintiff.

131.  Plaintiff is entitled to damages in amounts to be proven at trial

## COUNT VIII:
## (UNJUST ENRICHMENT: Against All Defendants)

132.  Plaintiff incorporates the preceding allegations as if the allegations are fully set forth in this paragraph.

133.  Defendants were enriched by keeping Plaintiff's Miners, the bitcoins mined from Plaintiff's Miners, and the deposits Plaintiff made to Defendants.

134.  Defendants benefitted at Plaintiff's expense.

135.  It is against equity and good conscience to permit Defendants to retain Plaintiff's deposits, Plaintiff's Miners, and the bitcoins Mined from Plaintiff's Miners.

136.  Plaintiff has incurred damages to be proven at trial.

## COUNT IX:
## (CIVIL THEFT: Against All Defendants)

137.  Plaintiff incorporates the preceding allegations as if the allegations are fully set forth in this paragraph.

138. Defendants have obtained property that belong to Plaintiff and have exercised dominion and control over Plaintiff's Property.

139.  Defendants have exercised dominion and control over Plaintiff's property in the manner that deprives Plaintiff from accessing or using its property in a manner consistent with Plaintiff's interests in its Property.

140.  Plaintiff is entitled to damages in an amount to be proven at trial.

WHEREFORE, based on the foregoing, Plaintiff seeks the following reliefs:

     (i)    For the return of all of Plaintiff's Miners;

     (ii)   For treble damages on all monetary damages Plaintiffs suffered;

     (iii)  For all sums Defendants have earned from operating Plaintiffs' Miners;

     (iv)  For attorney fees and costs pursuant to the Agreement;

     (v)   For all equitable relief this court deems proper under the laws of the state of New York;

     (vi)  For moratory interests on all damages incurred by Plaintiffs; and

     (vii) For all other relief this Court determines to be proper under the laws of the states of New York and under Federal law.

Dated as of December 8, 2020
New York, New York

**RESPECTFULLY SUBMITTED**,

*/s/ T. Edward Williams, Esq.*
T. Edward Williams, Esq.
WILLIAMS LLP
7 World Trade Center
250 Greenwich 46th FL.
New York, New York 10007
Tel: 212.634.9106
Fax: 212.202.6228
Edward.williams@wmsintl.com